NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 27, 2007
Decided June 18, 2008

**Before**

DANIEL A. MANION, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 07-1901 | Appeal from the United States District Court for the Eastern District of Wisconsin |
| LLOYD T. STRACKBEIN, *Plaintiff-Appellant*, | |
| | No. 05 C 0900 |
| *v.* | |
| MICHAEL W. WYNNE, Secretary, and DEPARTMENT OF THE AIR FORCE, *Defendants-Appellees*. | **Lynn Adelman**, *Judge*. |

**O R D E R**

Lloyd Strackbein worked as a mechanic with the Air Force Reserve. In 2004, the Air Force removed Strackbein from his job because he was eligible to receive unreduced retirement benefits. Strackbein appealed the Air Force's decision to the Merit System Protection Board which affirmed the Air Force's decision. After exhausting his

administrative remedies, Strackbein filed suit in the Eastern District of Wisconsin asserting that the Air Force's removal violated 10 U.S.C. § 10218, 5 U.S.C. § 7513, and the Age Discrimination Employment Act, 29 U.S.C. §621, et seq.  The district court granted summary judgment in favor of the Air Force.  Strackbein appeals, and we affirm.

I.

Lloyd Strackbein ("Strackbein") worked for the Air Force as an aircraft jet mechanic at the Air Force Reserve facility in Milwaukee, Wisconsin.  Initially, Strackbein was employed in the Air Reserve Technician ("ART") program as a "dual status technician." A dual status technician is a person who is both a civilian employee and a member of the Air Force Reserve. Strackbein worked as a dual status technician until 2000, when he was honorably discharged from the Air Force Reserve because of a physical disqualification, namely sleep apnea.

While "[a]ctive membership in the applicable reserve unit is a condition of employment," technicians who are discharged from the Air Force Reserve because of a medical condition beyond their control and who are still qualified to perform their duties may retain their employment as non-dual status technicians ("NDST").  AFRCI 36-114 ¶¶ 3 & 3.5.  After his discharge from the Air Force Reserve in 2000, Strackbein did just that and continued to work as a civilian employee as a NDST.  A condition of his employment as a NDST was that Strackbein must be separated from service "no later than 30 days after attaining eligibility for civil service retirement unreduced due to age or years of service." AFRCI 36-114 ¶ 3.5.2.  Strackbein received notice of this condition in his "Notification of Personnel Action" the Air Force issued on May 24, 2000, which stated that January 30, 2004, was the date on which he would be eligible for unreduced retirement.

Three years later, on August 22, 2003, the Air Force issued a memorandum in which it proposed removing Strackbein as a civilian employee effective January 30, 2004—Strackbein's fifty-fifth birthday. The Air Force stated that Strackbein's removal was a non-disciplinary removal and cited the Air Force Reserve Command Instruction ("AFRCI") 36-114, paragraph 3.5.  AFRCI 36-114, paragraph 3.5 provides in relevant part: "NDSTs first hired as an ART or military reserve technician (dual status) on or before 10 February 1996 must be separated no later than 30 days after attaining eligibility for civil service retirement unreduced due to age or years of service." In underlined text, the Air

Force continued: "You will 'attain eligibility for civil service retirement unreduced due to age or years of service' on 30 January 2004. Therefore, and IAW AFRCI 36-114, para. 3.5.2.1. [sic], you must be separated no later than 30 days from that date."

On October 22, 2004, the Air Force issued its decision to remove Strackbein effective January 30, 2004. Strackbein left his job with the Air Force on January 30, 2004, when he turned age fifty-five and was eligible for civil service retirement unreduced due to age or years of service.

Strackbein filed a timely appeal of his removal with the Air Force's Merit Systems Protection Board ("MSPB"). Strackbein contended that Air Force regulation 36-114, paragraph 3.5.2.1, violates 10 U.S.C. § 10218(a)(3)(B)(ii), which provides that a NDST shall be separated or retired no later than 30 days after becoming eligible for unreduced retirement and becoming 60 years of age. According to Strackbein, this required the Air Force to retain him until he turned 60. The MSPB rejected Strackbein's position, holding that the Air Force regulation did not run afoul of 10 U.S.C. § 10218 because the statute set forth a deadline by which NDSTs must retire rather than requiring their retention until age 60. Strackbein also argued that his removal violated the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §621, et seq. The MSPB rejected Strackbein's ADEA argument noting that Strackbein failed to show that "his age was the determinative factor in the agency's decision to remove him from employment." The MSPB concluded that the Air Force's policy of retaining NDSTs until they reached eligibility for an unreduced civil service retirement annuity was not a separation based on age. Finally, the MSPB rejected Strackbein's contention that his removal was unrelated to the promotion of the efficiency of the service as required by 5 U.S.C. § 7513(a). The MSPB reasoned:

> The purpose of the Selected Reserve technician program is to provide active reserve units, which are composed chiefly of personnel who train only a few days each month and two weeks in the summer, with a core of more highly trained personnel whose full-time civilian jobs coincide with their military jobs. Thus, it promotes the efficiency of the service to remove from employment dual status technicians who lose membership in their local reserve units.

Strackbein filed an appeal with the full MSPB, which denied Strackbein's petition on May 9, 2005, and stated that the MSPB administrative judge's decision was the final

decision of the MSPB. The Equal Employment Opportunity Commission ("EEOC") concurred with the final MSPB decision. After exhausting his administrative remedies, Strackbein filed a complaint in the Eastern District of Wisconsin. The parties filed cross-motions for summary judgment, and the district court granted judgment in favor of the Air Force. Strackbein appeals asserting the three main arguments that he made to the MSPB.

II.

First, Strackbein asserts that pursuant to 10 U.S.C. § 10218, he should not have been removed from employment as an NDST until he turned sixty years old. This court reviews de novo the district court's statutory interpretation. *See Masters v. Hesston Corp.*, 291 F.3d 985, 989 (7th Cir. 2002); *Curran v. Kwon*, 153 F.3d 481, 485 (7th Cir. 1998). When interpreting statutes, we give words their plain and ordinary meaning. *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007). "Our basic task in statutory interpretation is 'to give effect to the intent of Congress.'" *United States v. Bank of Farmington*, 166 F.3d 853, 858 (7th Cir. 1999) (quoting *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940)).

Entitled, "Army and Air Force Reserve technicians: conditions for retention; mandatory retirement under civil service laws," 10 U.S.C. § 10218(a)(3)(B)(ii)(I) provides that

> [a]n individual employed by the Army Reserve or the Air Force Reserve as a military technician (dual status) who after October 5, 1999, loses dual status is subject to paragraph (2) or (3), as the case may be. . . . If such a technician continues employment with the Army Reserve or the Air Force Reserve as a non-dual status technician, the technician shall be separated or retired in the case of a technician first hired as a military technician (dual status) on or before February 10, 1996, *not later than 30 days after becoming eligible for an unreduced annuity and becoming 60 years of age* . . . .

(emphasis added). Contrary to Strackbein's contention that he should not have been forced to retire until he turned sixty years old, the statutory language only requires that an NDST retire by a particular time and does not preclude removal at an earlier date. In other words, the statute sets the age of sixty as an outer limit for an NDST's retirement, not a threshold he must pass before retirement. Accordingly, the district court properly affirmed

the MSPB's determination that Strackbein's removal at age fifty-five did not violate 10 U.S.C. § 10218(a)(3)(B)(ii)(I).

Regarding the civil service issues the MSPB determined, we will not reverse the MSPB's decision unless it was arbitrary and capricious. *Maulding v. Sullivan*, 961 F.2d 694, 698-99 (8th Cir. 1992) (citation omitted). Strackbein contends that his removal was not for "such cause as will promote the efficiency of the service" pursuant to 5 U.S.C. § 7513(a) because his removal was a non-disciplinary action.

According to the Air Force Reserve Command Instruction "Procedures on Air Reserve Technicians (ART) Who Lose Active Membership in the Reserve,"

> ARTs are full-time civilian employees who are also active members of the Air Force reserve unit in which they are employed. In addition to their civil assignments, they are assigned to equivalent positions in the reserve organization with a reserve military rank or grade. *They play vital roles in the combat readiness of their reserve unit by training other reservists serving as mobilization assets when the unit is mobilized.*

AFRCI 36-114 ¶ 2 (emphasis added). Generally, active membership in a reserve unit is a required employment condition. AFRCI 36-114 ¶ 3. Only when a technician fails a medical reserve examination for reasons beyond his control may that technician continue in his employment as a NDST. AFRCI 36-114 ¶ 3.4. Thus the Air Force permits ARTs such as Strackbein, who are no longer Reserve members because of a medical condition outside of their control, to continue as NDSTs. However, the Air Force is not precluded from limiting the amount of time that NDSTs may continue in that capacity in light of the important role that they serve to the unit for which they provide service. As the MSPB administrative law judge noted,

> the purpose of [the position in which Strackbein worked] is to provide active reserve units, which are composed chiefly of personnel who train only a few days each month and two weeks in the summer, with a core of more highly trained personnel whose full-time civilian jobs coincide with their military jobs. Thus, it promotes the efficiency of the service to remove from employment dual status technicians who lose membership in their local reserve units.

Technicians have a very important role in their units as "mobilization assets." Given the inability of NDSTs who have lost their Reserve membership to accompany units when they are mobilized, we conclude that the MSPB did not act arbitrarily and capriciously in determining that Strackbein's removal promoted the efficiency of the service pursuant to 5 U.S.C. § 7513(a).

Finally, Strackbein asserts that his removal at age fifty-five violates the ADEA. To establish a claim under the ADEA, a plaintiff must show that his age "actually motivated the employer's decision—that is, the employee's [age] must have actually played a role in the [employer's decision-making] process and had a determinative influence in the outcome." *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). Strackbein contends that at the time of his removal he was fifty-five years old and was terminated because he "attain[ed] eligibility for civil service retirement unreduced due to age or years of service" within the meaning of the operative Air Force Reserve regulation. Strackbein further notes that a retirement recipient must be at least fifty-five years old to receive the annuity, and this fact alone, according to Strackbein, is sufficient to establish an ADEA violation.

The Air Force regulation under which Strackbein was forced to retire as an NDST specifically references 10 U.S.C. § 10218 noting that "NDSTs are subject to the mandatory separation provisions" of the statute as well as the "provisions based on failure to maintain active membership in the Reserve that are described in this instruction." AFRCI 36-114 ¶ 3.5. Specific statutes supercede general statutes, and "a later enacted statute may limit the scope of an earlier statute." *Brotherhood of Maintenance of Way Employees v. CSX Transp., Inc.*, 478 F.3d 814, 817 (7th Cir. 2007). Because 10 U.S.C. § 10218 is a more specific statute than the ADEA, a general statute, and Section 10218 was enacted after the ADEA, it supercedes the ADEA. *See Morton v. Mancari*, 417 U.S. 535, 550-51 (1973) (noting that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment."). *See generally Strawberry v. Albright*, 111 F.3d 943, 947 (D.C. Cir. 1997) (affirming the denial of a federal employee's ADEA claim when the provisions of the Foreign Service Act pursuant to which the employee was forced to retire at age sixty-five were more specific and thereby not nullified by the ADEA). Because Strackbein was forced to retire pursuant to the Air Force procedures implementing the statutory mandate set forth in 10 U.S.C. § 10218, Strackbein's ADEA claim fails.

III.


Strackbein's retirement at age fifty-five does not violate 10 U.S.C. § 10218 or the ADEA.  Also, the MSPB decision that Strackbein's retirement pursuant to AFRCI 36-114 promoted the efficiency of the service was not arbitrary and capricious.  Accordingly, we AFFIRM.